UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH MARVIN DARBY,

        Plaintiff,                    Case Number 15-10188

v.                                           Honorable David M. Lawson

GRANGE INSURANCE COMPANY
OF MICHIGAN,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Joseph Darby filed the present action for breach of a hazard insurance contract covering residential rental property in Southfield, Michigan. Defendant Grange Insurance Company issued an insurance policy covering the house, which was damaged by a fire that appears to have originated in the attic. The defendant refused to pay the loss based on its belief that the plaintiff deliberately set the fire. Presently before the Court is the defendant's motion for summary judgment, asking the Court to declare as a matter of law that the defendant's refusal to pay the loss was justified. The plaintiff filed an answer in opposition to the motion. The motion papers adequately set forth the relevant facts and law, and oral argument will not aid in the disposition of the motion. Therefore, it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(f)(2). The record before the Court presents obvious fact issues that preclude summary judgment. The motion will be denied.

I.

The basic facts of the case are undisputed. The plaintiff owned a rental home at 21380 Lahser in Southfield, Michigan. The property was insured against fire loss under a policy of

insurance issued by the defendant Grange, with a one-year term that began on October 21, 2013. The policy contained an exclusion stating that it did not cover any loss due to an act done by or at the direction of the insured with the intent to damage the property:

> Intentional acts, meaning loss resulting from an action by or at the direction of any insured, committed with the intent to cause a loss, or where the results of such action are reasonably foreseeable and cause a loss. Intentional acts include criminal acts. In the event of such loss, no insured is entitled to coverage, even an insured who did not commit or conspire to commit the act causing the loss.

Policy Exclusions ¶ I.A.8 (Pg ID 1014).

On December 2, 2013, at 9:27 p.m., the Southfield Fire Department received a call from a neighbor who lived near the 21380 Lahser address who said that she smelled smoke in the area. While fire trucks were on the way to the area, the neighbor called back and reported seeing smoke coming from the home. When fire fighters arrived, they "forced [entry] through the secured door," pulled hoses to the attic of the home, and put out a fire. After the fire was extinguished, the neighbor told fire fighters that the home was unoccupied.

On December 10, 2013, the plaintiff submitted a claim to the defendant for the fire loss at the property. The defendant retained a cause-and-origin investigator and conducted an examination under oath of the plaintiff relating to the claim. After reviewing the claim, the defendant denied it because it concluded that the plaintiff was responsible for intentionally setting the fire and coverage therefore was excluded.

The Michigan State Police Laboratory tested a charred plastic bottle, brown paper bag, and clothing recovered from the scene. The analyst reported the presence of residual amounts of isopropyl alcohol on the items.

The remaining facts regarding (1) the cause and origin of the fire; and (2) the plaintiff's role, if any, in causing the fire, are hotly disputed by the parties.

The defendant's investigator, Michael Roarty, visited the scene, inspected items retrieved from the home, reviewed laboratory reports on those items, and interviewed the plaintiff, the neighbor who called 911, and the fire marshal who responded to the fire. Roarty concluded that the fire was set intentionally by someone who had poured isopropyl alcohol on flammable clothing that was found in the attic of the home and ignited it. Roarty noted that a partly empty bottle of alcohol and alcohol soaked clothing were recovered from the attic where the fire started. Roarty also reported that the plaintiff told him the property had been unoccupied since October 2013, after the last tenant had moved out or abandoned her lease, that the plaintiff had changed the locks at the home after it was vacated, and that "he possessed the only keys to the dwelling." The plaintiff also told Roarty that he was last inside the home about a week before the fire had occurred, and when he left "all doors and windows were secure."

The plaintiff's expert fire investigator, Richard Kovarsky, opined that there were several defects and inconsistencies in the report of the defendant's investigator, including: (1) there was no indication in any of the reports or interviews whether or not windows to the house were locked at the time of the fire; (2) an expert electrical engineer reported that three circuit breakers in the basement were found to be "tripped," which appeared to be due to unusual electrical activity in the attic, and not due to fire damage; and (3) the defendant's expert failed adequately to investigate or eliminate likely causes of the unusual electrical activity, such as rodent damage to wiring in the attic area, which plausibly could have provided an alternative source of ignition. Kovarsky further opined that there was no detailed report of the condition or arrangement of the clothing that was

recovered from the attic at the time it was found by fire fighters, and that the defendant's expert's characterization of the clothing as a "trailer" was speculative and assumed rather than established that the fire was intentionally set.

The plaintiff stated in an affidavit that on December 2, 2013 he spent the day "making the rounds" of new car dealerships in Dearborn, Michigan, looking for used cars that he could buy and resell for a profit. The plaintiff was in Dearborn until 9:00 p.m., and he then drove from Dearborn to Inkster to pick up his friend "Ms. Craig." He then drove with Ms. Craig to his home in Southfield, arriving around 9:30 p.m. With respect to the fire at 21380 Lahser, the plaintiff stated: "I did not start the fire or cause it to be set." As to his alleged "financial distress" in late 2013, the plaintiff stated that, as of the date of the fire, he had equity in his own home and rental properties sufficient to realize $66,000 net cash upon the sale of those properties.

On January 17, 2015, the plaintiff filed his complaint against the defendant, and, on February 27, 2015, he filed an amended complaint. The complaint sets forth a single substantive count for breach of contract under state law (count I). Although styled as separate claims, the second and third counts of the complaint are merely recitations of the prayer for relief, in which the plaintiff seeks penalty interest under Michigan Compiled Laws § 500.2836 (count II) and an appraisal of the loss amount as provided for under the insurance policy (count III). The defendant timely filed its motion for summary judgment after the close of the discovery period, followed by an amended motion three days later (the original motion was stricken by agreement of the parties because it included an unredacted exhibit). The plaintiff filed a response and the defendant filed a reply.

II.

The defendant insurer seeks summary judgment on its affirmative defense that the plaintiff violated the intentional acts exclusion in the insurance policy, thereby barring all coverage. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

"The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." 576 F.3d at 558. (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Id.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A party opposing a motion

for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting 477 U.S. at 248).

When the moving party also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must carry that burden. *Vance v. Latimer*, 648 F. Supp. 2d 914, 919 (E.D. Mich. 2009); *see also Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992); *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997) (stating that where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense"). In his commentary on affirmative motions for summary judgment, Judge William Schwarzer explains:

> When the moving party bears the burden of persuasion on the issue at trial, its showing must sustain that burden as well as demonstrate the absence of a genuine dispute. Thus, it must satisfy both the initial burden of production on the summary judgment motion — by showing that no genuine dispute exists as to any material fact

-6-

> — and the ultimate burden of persuasion on the claim — by showing that it would be entitled to a directed verdict at trial.

William W. Schwarzer, et al., The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 477-78 (1992) (footnote omitted).

Because this is a diversity action, the Court must follow Michigan substantive law, as prescribed by the state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). If the Michigan Supreme Court has not addressed a determinative point of law, this Court "must predict how it would resolve the issue from 'all relevant data.'" *Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995) (citing *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985)). "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the Michigan Supreme Court would decide otherwise." *Ibid.* (citing *FL Aerospace v. Aetna Casualty and Surety Co.*, 897 F.2d 214, 218-19 (6th Cir. 1990)).

To state a claim for breach of contract under Michigan law, a plaintiff first must establish the elements of a valid contract. *Pawlak v. Redox Corp.*, 182 Mich. App. 758, 765, 453, N.W.2d 304, 307 (1990). The elements of a valid contract in Michigan are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Thomas v. Leja*, 187 Mich. App. 418, 468 N.W.2d 58, 60 (1990). Once a valid contract has been established, the plaintiff then must prove (1) the terms of the contract, (2) breach of those terms by the defendant, and (3) injury to the plaintiff resulting from the breach. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003).

The allocation of the burdens of proof in a case involving the breach of a contract that is an insurance policy is well settled under Michigan law. The insured bears the burden of establishing

coverage under the policy and the insurer's breach. *Hunt v. Dreilick*, 496 Mich. 366, 373, 852 N.W.2d 562, 565 (2014). The insurer bears the burden of proving that coverage is negated by a policy exclusion. *Ibid.* "[E]xclusionary clauses in insurance policies are strictly construed in favor of the insured." *Ibid.* (quoting *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567, 489 N.W.2d 431, 434 (1992)).

The defendant argues that it has proven the plaintiff had the means, motive and opportunity to cause the fire loss, and the plaintiff has failed to produce any credible, admissible evidence to dispute the facts proven by Grange. Grange concludes, with little elaboration, that it has met its burden to prove that the plaintiff violated the intentional acts exclusion in the policy.

The plaintiff argues that he has raised genuine issues of material fact as to (1) whether the fire was intentionally set or accidental; (2) whether the plaintiff had any involvement in setting the fire, if it was intentionally set; and (3) whether the plaintiff was in "financial distress" at the time of the fire such that he had a motive to burn the property. The plaintiff argues that, if the jury finds that the fire was not intentionally set or that the plaintiff was not involved in setting it, then the defendant had no justification for withholding payment under the intentional act and misrepresentation provisions of the policy, and on that basis he has made out a valid claim for breach of the policy based on the defendant's refusal to pay his claim.

The plaintiff has submitted sufficient evidence from which a jury reasonably could conclude that the defendant breached the terms of the policy of insurance by refusing to pay for the plaintiff's covered loss. It is undisputed that the 21380 Lahser property was covered by the policy issued by the defendant, which insured against loss caused by fire. The parties do not dispute that the home was damaged by a fire on December 2, 2013, the plaintiff timely submitted a claim for the loss on

December 10, 2013, and the defendant refused to pay that claim, because it concluded that the plaintiff was responsible for setting the fire. If the jury finds that the plaintiff did not set the fire, then it reasonably could conclude that the defendant had no valid reason for denying the claim, and that it therefore breached the terms of the policy by refusing to pay for a covered loss.

The defendant's summary judgment brief may, when the time comes, make an effective outline for its closing argument to a jury. It falls far short, however, of establishing that no jury should be troubled to hear that argument. Even accepting for the sake of argument the defendant's contention that its expert's testimony unassailably establishes that the fire was deliberately set, there still remains a central dispute between the parties as to whether the plaintiff set the fire. The plaintiff's sworn affidavit testimony that he did not set the fire or cause it to be set, and that he was not at the property when the fire was set, is sufficient in itself to submit to a jury that dispositive question whether he intentionally caused the fire damage to his property. The uncorroborated affidavit testimony of a single witness directly relevant to a question of material fact is sufficient to defeat summary judgment, unless it flatly contradicts prior sworn testimony. *United States v. Funds in Amount of One Hundred Thousand One Hundred & Twenty Dollars ($100,120.00)*, 730 F.3d 711, 718 (7th Cir. 2013) ("Marrocco's affidavit testimony — though uncorroborated and self-serving — does not contradict any prior sworn statement. Therefore, Marrocco may rely upon his affidavit to defeat summary judgment."). The defendant contends that the plaintiff made inconsistent statements about his itinerary and activities on December 2, 2013, but it has not identified any prior sworn testimony that directly contradicts the plaintiff's sworn assertion that he had no part in setting the fire. Moreover, it appears undisputed that the plaintiff never directly was asked during his

examination under oath whether he set the fire or caused it to be set. He has averred in opposition to the present motion, however, "I did not set the fire or cause it to be set."

The defendant contends that the fire department incident report establishes that the home was "vacant and secured" when the fire started, but the presence of that evidence in the record does not leave it so heavily slanted in the defendant's favor that no jury reasonably could find for the plaintiff. First, the jury remains free to accept or reject, in whole or in part, any or all of the circumstantial evidence that the defendant points to in support of its position. In a summary judgment proceeding, the Court must "draw all reasonable inferences in favor of the nonmoving party." *Hawkins v. Anheuser–Busch Inc.*, 517 F.3d 321, 332 (6th Cir. 2008). Second, the jury reasonably could infer that, although the firefighters found the entrance door to the home to be "secured," the person who set the fire entered the home some other way, such as by forcing open a window. Although the fire department report does refer to entry through a "secured" door, there are no specific references in the report to whether any other avenues of entrance (such as windows or other doors) were specifically checked and found to be locked and secure. Finally, it also would be reasonable for the jury to infer, despite the observation of the "secured" entrance door, that the responsible party entered the house by defeating the door's lock, taking care to re-secure the door when leaving.

After considering all of the other circumstances and testimony outlined by the defendant, the jury may not find the plaintiff's alibi and his denial that he had any part in setting the fire particularly credible. But the decision to accept or reject that testimony is one reserved for the jury alone, and that testimony raises a genuine issue of material fact as to the plaintiff's culpability that may not be resolved as a matter of law on summary judgment. "[A]t the summary judgment stage

the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### III.

The record fairly presents fact questions that preclude summary judgment in the defendant's favor.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt. #16] is **DENIED**. The motion hearing previously scheduled for November 16, 2015 is **CANCELLED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   November 10, 2015

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 10, 2015.

s/Susan Pinkowski  
SUSAN PINKOWSKI

---